UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALEXANDER E. HOWELL, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CV-1430-NCC |
| | ) | |
| SAINT LOUIS CITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of self-represented plaintiff Alexander E.
Howell, III, an inmate currently incarcerated at the Eastern Reception Diagnostic and Correctional
Center, for leave to commence this civil action without payment of the required filing fee. ECF
No. 2. Having reviewed the motion and the financial information submitted in support, the Court
has determined plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial
partial filing fee of $44.60. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed
below, the Court will allow plaintiff the opportunity to submit an amended complaint.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is
required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her
prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial
partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's
account, or (2) the average monthly balance in the prisoner's account for the prior six-month
period. After payment of the initial partial filing fee, the prisoner is required to make monthly

1

payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

In support of the motion for leave to proceed *in forma pauperis*, plaintiff submitted a copy of a non-certified inmate account statement. ECF No. 3. A review of plaintiff's account indicates an average monthly deposit of $222.97 and an average monthly balance of $44.80. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $44.60, which is 20 percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that a court must accept factual allegations in the complaint as true but is not

required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented complainants are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff that assumed facts that had not been pleaded). In addition, affording a self-represented complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 on a Court-provided 'Prisoner Civil Rights Complaint' form.[1] Plaintiff names fifteen defendants as follows: (1) St. Louis City; (2) St. Louis County; (3) Chris Incense, correctional officer; (4) Dr. Sizikie, psychiatrist; (5) Roberta Gordon, caseworker; (6) Lieutenant Brock; (7) J. Barnes, accreditation manager; (8) Major Tim Ishmon; (9) Sergeant S. Maddex; (10) Amy McKinney, PREA coordinator; (11) L.

---

[1] Plaintiff indicates in her complaint that she is a male who identifies as a female. The Court will, therefore, use the pronouns "she" and "her" when referring to plaintiff.

Johnson; correctional officer; (12) Mildred Winston, correctional officer; (13) Mr. Smith, acting director; (14) Mary Holtgate, mental health social worker; and (15) Mr. Brim, housing unit manager. All defendants are alleged to be employees of either the St. Louis County Department of Justice Services or the St. Louis City Justice Center. Plaintiff names defendants Incense, Sizikie, and Maddex in their individual capacities only; defendants Ishmon, Smith, Holtgate, and Brim in their official capacities only; and defendants Gordon, Brock, Barnes, McKinney, Johnson, and Winston in both their individual and official capacities.

Plaintiff's statement of the claim is presented on approximately eighteen pages of single-spaced notebook paper. She alleges she was arrested on February 15, 2021 and has been "discriminated against, harassed, threatened of being killed, and raped/sexually assaulted by the hands and will of another inmate." It appears she was initially incarcerated in St. Louis County and subsequently transferred to the St. Louis City Justice Center. Her complaint involves alleged constitutional violations from both facilities.

On an unidentified date, plaintiff asserts she was placed in the infirmary and "during [her] medical screening, the doctor tried to force [her] to take [her] cups off." In April of 2021, plaintiff states she started "getting into it" with defendant Johnson because he called her an "abomination." Plaintiff explains she became aggressive and disrespectful and was put on mood stabilizers to help control her behavior. In May of 2021, plaintiff filed grievances against defendant Johnson for sexual harassment and refusing to provide her with assistance for her "needs."

In June of 2021, plaintiff informed "mental health" that she was having thoughts about castrating herself. In August of 2021, defendant social worker Holtgate assured plaintiff she would set up a therapy appointment, but it was never scheduled. Plaintiff subsequently "began writing

grievances for therapy and counseling." In September of 2021, plaintiff was approached by an unidentified sergeant who threatened her. Plaintiff asserts the sergeant was subsequently assigned to another housing unit but he "continue[d] to enter [her] housing unit, although making no verbal communication." Plaintiff alleges two other unidentified officers began to call her derogatory names and she was moved to an isolation pod.

Plaintiff used the law library to research gender dysphoria and made a request to be screened for the condition, but was denied. Plaintiff filed additional grievances. Plaintiff alleges that on "some occasions" she was ignored when she pressed the medical emergency button, and was told by defendant Johnson to not talk to him. Plaintiff does not explain what medical emergencies, if any, were ignored. Plaintiff asserts defendant Ishmon was notified of her complaints, but did not discipline or properly train the institutional staff. Defendant Winston allegedly told plaintiff that defendant Ishmon "ain't gone [sic] do shit." Plaintiff further complains of the inadequacy of the grievance procedures, and asserts she should have been placed in general population with female inmates instead of in isolation.

Plaintiff states she was transferred to the St. Louis City Justice Center on October 4, 2021. She alleges defendants Brim and Brock forced her to remove her implants and feminine undergarments, and placed her with male inmates. Plaintiff asserts defendant Dr. Sizikie refused to use her preferred pronouns and delayed her medical screening which caused her to be denied medication for at least a week. Plaintiff further alleges a fellow inmate forced her into performing a sexual act and defendant Incense failed to protect her because he was on Facebook at the time of her sexual assault. It is unclear from the complaint whether defendant Incense was aware of the

assault while it was occurring. Plaintiff states she reported the incident, but defendants Brim and Gordon did not sufficiently assist.

On October 20, 2021, plaintiff was transferred back to the St. Louis County Justice Center and placed into isolation. Plaintiff asserts defendant Barnes violated her rights by refusing to place her with female inmates "because of what's between [her] legs." In November of 2019, plaintiff states she attempted suicide and was admitted into the infirmary. Plaintiff complains she has yet to receive therapy, which "is guaranteed in the inmate handbook." Plaintiff further alleges that on an unidentified date, defendant Brock "maced [her] on a suicidal call unnecessarily, not following protocol" in retaliation "for cracking the infirmary windows."

For relief, plaintiff seeks monetary damages in the amount of 1.5 million dollars for trauma, insomnia, anxiety, and depression.

**Discussion**

Having thoroughly reviewed and liberally construed the complaint, and for the reasons discussed below, the Court will direct plaintiff to amend her complaint for the purpose of curing her pleading deficiencies.

### A. Individual Capacity Claims

First, plaintiff is advised that Rule 8(a) of the Federal Rules of Civil Procedure, which governs pleading standards requires only a "*short and plain statement of the claim* showing that the pleader is entitled to relief." (emphasis added). In order to conform to the requirements of Rule 8, plaintiff's complaint must contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Fed. R. Civ. P.

6

8(a). Rule 8(e)(1) requires that "[e]ach averment of a pleading shall be simple, concise, and direct."

Fed. R. Civ. P. 8(e)(1). Under federal "notice pleading" rules, a pleading need only be sufficient

to place the opposing party on notice of the possible claims. *Smith v. St. Bernards Reg'l Med. Ctr.*,

19 F.3d 1254, 1255 (8th Cir. 1994). The primary purpose of Rule 8 is to allow the Court and the

opposing party to understand whether a valid claim is alleged and, if so, what it is. *Id.* The

complaint must be sufficiently clear so the Court or opposing party "is not required to keep sifting

through it in search of what it is plaintiff asserts." *Id.* (citing *Vicom, Inc. v. Harbridge Merch.

Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994)).

Although plaintiff is self-represented, she must still comply with the orders of this Court

and the Federal Rules of Civil Procedure. *See Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86

F.3d 852, 856 (8th Cir. 1996); *American Inmate Paralegal Ass'n v. Cline*, 859 F.2d 59, 61 (8th

Cir. 1988). Here, plaintiff's complaint abjectly fails to meet the short and plain statement

requirement of Rule 8(a) and is the opposite of "simple, concise, and direct." The Court finds

plaintiff's eighteen-page statement of the claim to be lengthy, repetitive, and disorganized, making

it difficult for the Court to decipher the specific allegations plaintiff intends to bring against each

named defendant or how some of the defendants are directly responsible in their individual

capacities. As such, plaintiff's complaint is subject to dismissal for failure to comply with Rule

8(a).

Second, plaintiff's claims are also subject to dismissal because they impermissibly involve

unrelated events. Rule 20(a)(2) of the Federal Rules of Civil Procedure governs joinder of

defendants, and provides:

> Persons . . .  may be joined in one action as defendants if: (A) any right to relief is
> asserted against them jointly, severally, or in the alternative with respect to or

7

arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). As such, a plaintiff cannot join, in a single lawsuit, multiple claims against different defendants related to events arising out of different transactions or occurrences. In other words, "Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In the instant complaint, plaintiff alleges multiple unrelated claims against employees of two different institutions over a several month period. Unrelated claims against different defendants belong in different suits. Thus, if it is plaintiff's intent to bring this action alleging constitutional violations by employees at the St. Louis County Department of Justice Services, it is not appropriate for her to also bring unrelated allegations from her incarceration at the St. Louis City Justice Center.

Third, "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). *See also Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (§ 1983 liability arises only upon a showing of personal participation by defendant); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff). In order to state an actionable civil rights claim against each defendant, plaintiff must set forth *specific* factual allegations showing what that particular defendant actually did, or failed to do, that violated the plaintiff's federally-protected rights. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (a plaintiff must plead facts showing each named defendant's personal involvement in the alleged constitutional wrongdoing). In the instant complaint, plaintiff

often presents allegations without identifying the defendant responsible. Moreover, plaintiff appears to hold some defendants liable simply because they held supervisory or administrative positions. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (claims sounding in respondeat superior are not cognizable under § 1983).

Fourth, plaintiff's claims of name calling are subject to dismissal. Mere verbal threats or name calling made by a state actor do not constitute a § 1983 claim. *See McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983"); *Burton v. Livingston*, 791 F.2d 97, 99-100 (8th Cir. 1986) (mere words, without more, do not invade a federally protected right; "rough language" resulting only in hurt feelings is not actionable under § 1983); *Martin v. Sargent*, 780 F.2d 1334, 1338-39 (8th Cir. 1985) (verbal threats and name calling are not actionable under § 1983); *Robison v. Sanderson*, Case No. 4:19-CV-01182-AGF, 2019 WL 6115198, at *4 (E.D. Mo. Nov. 18, 2019), *appeal dismissed*, No. 20-1628, 2020 WL 5641107 (8th Cir. June 1, 2020) (rude statements and sexual slurs due to defendant's purported dislike of transgender inmate did not rise to a constitutional violation); *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) (allegations that officers threatened to kill inmate not cognizable under § 1983). Therefore, the alleged name calling towards plaintiff, while wholly unprofessional, do not state a constitutional violation.

Fifth, to the extent plaintiff intends to complain about the inadequacy of the grievance procedure, such claims are not cognizable. A grievance procedure does not confer upon plaintiff a substantive right. "In the context of a state prison system, an inmate grievance procedure is not constitutionally required." *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. July 18, 1986). "If the state elects to provide a grievance mechanism, violations of its procedures do not deprive

prisoners of federal constitutional rights. Therefore, a state's failure to follow its grievance procedures does not give rise to a § 1983 claim." *Id. See also Hale v. Cooper*, Case No. 1:12-CV-188 SNLJ, 2013 WL 170735, at *2 (E.D. Mo. Jan. 16, 2013) ("refusal to provide plaintiff with a grievance form does not state a claim for relief").

In consideration of plaintiff's self-represented status, the Court will allow her the opportunity to submit an amended complaint which focuses on related allegations as required by Fed. R. Civ. P. 20(a)(2). In order to survive initial review, plaintiff must limit her allegations to those that directly implicate the named defendants and which relate to events arising out of the same transactions or occurrences. In other words, if she desires to bring this action against employees at the St. Louis County Justice Center, her complaint must *only* address related incidents which occurred at that specific institution.

### B. Official Capacity Claims

Plaintiff also brings this action against various named defendants in their official capacities, as well as St. Louis City and St. Louis County. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). A "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against a sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit

10

against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, all defendants are alleged to be employees of St. Louis County Justice Services or the St. Louis City Justice Center, which are departments of local government and not distinctly suable entities. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of police department because it was not a juridical entity); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Thus, plaintiff's official capacity claim against these entities or defendants as employees are subject to dismissal.

To the extent St. Louis County or St. Louis City employs the defendants, plaintiff's complaint fails to state a municipal liability claim. A local governing body can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, local governing body cannot be held liable merely because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality . . .   cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir.

11

2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of St. Louis County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.

12

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Here, plaintiff does not allege any facts to support the proposition that an unconstitutional policy exists. Plaintiff also fails to demonstrate that the inadequacies of any such policies were a product of deliberate or conscious choice by municipal policymakers. *See Monroe v. Precythe*, No. 4:19-CV-00392-JAR, 2020 WL 2322922, at *10 (E.D. Mo. May 11, 2020) (merely pointing to a policy is not enough to state a municipal liability claim). While a *pro se* pleading is to be liberally construed, it still must allege specific facts which, if proven true, would entitle the plaintiff to some legal relief against the named defendant(s) under some cognizable legal theory. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). "Threadbare recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court notes plaintiff asserts that some of the alleged violations were against "protocol" or not in compliance with the Inmate Handbook, which contradicts the existence of unconstitutional policy.

As to an unofficial custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" municipal employees, much less that municipal officials were deliberately indifferent to or tacitly authorized particular misconduct. of mere negligence is insufficient to demonstrate an unconstitutional policy or custom").

Likewise, plaintiff has not shown a "pattern of similar constitutional violations by untrained employees," which is necessary to demonstrate a failure to train. Her allegations relate

to her own experience, and do not show the existence of a pattern of conduct at either facility. Moreover, plaintiff asserts in a conclusory fashion that some defendants have not been trained properly, but does not provide any facts showing that municipal officials had notice that its training procedures were inadequate, were likely to result in a constitutional violation, or that any purported failure to train actually caused plaintiff's alleged injuries. Moreover, while plaintiff appears to take issue with Major Ishmon's failure to supervise or train, it is entirely unclear from the complaint whether he held any such position of authority which would have authorized him to supervise or train.

Because plaintiff has not alleged sufficient, non-conclusory facts showing an unconstitutional policy, custom, or failure to train on the part of municipal officials, she has not stated a municipal liability claim. Therefore, plaintiff's § 1983 action against St. Louis City, St. Louis County, and defendants in their official capacities are subject to dismissal. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### Instructions on Amending the Complaint

Plaintiff is warned that the filing of her amended complaint replaces the original complaint, and so it must include all claims plaintiff wishes to bring. *See In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect"). Plaintiff must type or neatly print the amended complaint on this Court's prisoner civil rights complaint form, which will be provided to her. *See* E.D. Mo. L.R. 45 – 2.06(A) ("All

actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms").

In the "Caption" section of the amended complaint, plaintiff must state the first and last name, to the extent she knows it, of each defendant she wishes to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). Plaintiff must *avoid* naming anyone as a defendant unless that person is directly related to her claim. Plaintiff must also specify whether she intends to sue each defendant in his or her individual capacity, official capacity, or both.

**In the "Statement of Claim" section, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should set forth a short and plain statement of the facts that support her claim or claims against that defendant.** *See* Fed. R. Civ. P. 8(a). Each averment must be simple, concise, and direct. *See id.* Plaintiff must state her claims in numbered paragraphs, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b). For example, plaintiff should write the name of the first defendant and in numbered paragraphs under that name state how that specific defendant violated her constitutional rights. Plaintiff should repeat this format for every named defendant. Plaintiff should not include any introductory paragraphs.

If plaintiff names a single defendant, she may set forth as many claims as she has against that defendant. *See* Fed. R. Civ. P. 18(a). **If plaintiff names more than one defendant, she should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other.** *See* Fed. R. Civ. P. 20(a)(2). Plaintiff cannot join, in a single lawsuit, multiple claims against different defendants related to events arising out of different transactions or occurrences.

It is important that plaintiff allege facts explaining how each defendant was personally involved in or directly responsible for harming her. *See Madewell*, 909 F.2d at 1208. Plaintiff must explain the role of the defendant, so the defendant will have notice of what he or she is accused of doing or failing to do. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim"). Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017). Plaintiff must not amend a complaint by filing separate documents. Instead, she must file a single, comprehensive pleading that sets forth her claims for relief.

### Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. ECF No. 4. In civil cases, a self-represented litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the self-represented litigant to investigate the facts, the existence of conflicting testimony, and the ability of the self-represented litigant to present his or her claim. *Phillips v.*

*Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After considering these factors, the Court finds that the appointment of counsel is unwarranted at this time. Plaintiff has yet to file a complaint that survives initial review, so it cannot be said that she has presented non-frivolous claims. Additionally, this case appears to involve straightforward factual and legal issues, and there is no indication that plaintiff cannot investigate the facts and present her claims to the Court.

The Court will therefore deny her motion without prejudice at this time. However, the Court will entertain a future motion for appointment of counsel, if appropriate, as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff shall pay an initial filing fee of $44.60 within thirty (30) days of the date of this Order. Plaintiff is instructed to make her remittance payable to "Clerk, United States District Court," and to include upon it: (1) her name; (2) her prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff two blank Prisoner Civil Rights Complaint forms. Plaintiff may request additional forms as needed.

**IT IS FURTHER ORDERED** that, within **thirty (30) days of the date of this Memorandum and Order**, plaintiff shall submit an amended complaint in accordance with the instructions set forth herein.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel [ECF No. 4] is **DENIED** without prejudice at this time.

**IT IS FURTHER ORDERED** that if plaintiff fails to timely comply with this Memorandum and Order, the Court will dismiss this action without prejudice and without further notice.

Dated this 21st day of January, 2022.


        /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE

18