# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ALEXANDER E. HOWELL, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-CV-1430-NCC |
| | ) |
| SAINT LOUIS CITY, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court upon the filing of an amended complaint by self-represented plaintiff Alexander E. Howell, III. ECF No. 12. For the reasons discussed below, the Court will dismiss this action because it fails to state a claim upon which relief may be granted.

## Background

On December 6, 2021, plaintiff filed this action pursuant to 42 U.S.C. § 1983 on a Court-provided 'Prisoner Civil Rights Complaint' form.[1] Plaintiff named fifteen defendants who were alleged to be employees of either the St. Louis County Department of Justice Services or the St. Louis City Justice Center. Some defendants were named in both their individual and official capacities, and other defendants were named in either their individual or official capacities.

Plaintiff's statement of the claim was presented on approximately eighteen pages of single-spaced notebook paper. It appeared she was initially incarcerated in St. Louis County and

---

[1] Plaintiff indicates in her complaint that she is a male who identifies as a female. The Court will, therefore, use the pronouns "she" and "her" when referring to plaintiff.

1

subsequently transferred to the St. Louis City Justice Center. Her complaint involved alleged incidents from both facilities.

Plaintiff stated she was placed in the infirmary and "during [her] medical screening, the doctor tried to force [her] to take [her] cups off." Plaintiff explained she started "getting into it" with defendant correctional officer Johnson because he called her an "abomination." Plaintiff admitted she became aggressive and disrespectful and was put on mood stabilizers to help control her behavior. Plaintiff filed grievances against defendant Johnson.

In June of 2021, plaintiff informed "mental health" she was having thoughts about castrating herself. In August of 2021, defendant social worker Holtgate allegedly failed to schedule her a therapy appointment, and plaintiff "began writing grievances for therapy and counseling." In September of 2021, plaintiff was approached by an unidentified sergeant who threatened her. It was unclear from the complaint how she was threatened. Plaintiff stated the sergeant was subsequently assigned to another housing unit but he "continue[d] to enter [her] housing unit, although making no verbal communication." Plaintiff alleged two other unidentified officers began to call her derogatory names and she was moved to an isolation pod.

Plaintiff used the law library to research gender dysphoria and made a request to be screened for the condition, but states she was denied. Plaintiff filed additional grievances. Plaintiff alleged that on "some occasions" she was ignored when she pressed the medical emergency button. Plaintiff did not explain what medical emergencies were ignored, if any. Plaintiff asserted defendant Major Ishmon was notified of her complaints, but did not discipline or properly train the institutional staff. Plaintiff alleged the grievance procedures were inadequate, and asserted she should have been placed in general population with female inmates instead of in isolation.

Plaintiff was transferred to the St. Louis City Justice Center in October of 2021. She alleged defendants Brim and Brock forced her to remove her implants and feminine undergarments, and placed her with male inmates. Plaintiff further alleged defendant Dr. Sizikie refused to use her preferred pronouns and delayed her medical screening which caused her to be denied medication for at least one week. Plaintiff asserted a fellow inmate forced her into performing a sexual act and defendant Incense failed to protect her because he was on Facebook at the time of her sexual assault. It was unclear from the complaint whether defendant Incense was aware of the assault while it was occurring. Plaintiff stated she reported the incident, but defendants Brim and Gordon did not sufficiently assist.

On October 20, 2021, plaintiff was transferred back to the St. Louis County Justice Center and placed into isolation. Plaintiff alleged defendant Barnes violated her rights by refusing to place her with female inmates. In November of 2019, plaintiff attempted suicide and was admitted into the infirmary. Plaintiff stated she did not receive therapy, which was "guaranteed in the inmate handbook." Plaintiff further alleged defendant Brock maced her for cracking the infirmary windows.

On January 21, 2022, the Court reviewed plaintiff's complaint pursuant to 28 U.S.C. § 1915, and found a number of pleading deficiencies. ECF No. 10. As to her official capacity claims, the Court explained such claims were actually against the governmental entities themselves. *Id.* at 10. Because all defendants were alleged to be employees of St. Louis County Justice Services or St. Louis City Justice Center, which are departments of local government, they were not distinctly suable entities. *Id.* at 11 (citing *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of police department because it was not a juridical

3

entity); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities)). The Court further noted that to the extent St. Louis County or St. Louis City employed the defendants, plaintiff's complaint failed to state a municipal liability claim. *Id.* at 11-14.

As to her individual capacity claims, the Court found them to be subject to dismissal for the following five reasons: (1) the eighteen-page statement of the claim failed to meet the short and plain statement requirement of Fed. R. Civ. P. 8(a); (2) plaintiff improperly alleged multiple claims against different defendants related to events arising out of different transactions or occurrences in violation of Fed. R. Civ. P. 20(a)(2); (3) failure to set forth specific factual allegations showing what each particular defendant actually did, or failed to do, that violated the plaintiff's federally-protected rights; (4) claims of verbal threats or name calling did not constitute a § 1983 claim; and (5) complaints about the adequacy of an institution's grievance procedure did not confer a substantive right. *Id.* at 6-10.

In consideration of plaintiff's self-represented status, the Court directed her to submit an amended complaint. Plaintiff was provided with detailed instructions on how to file an amended complaint, including how to format her statement of the claim.

## Amended Complaint

On February 8, 2022, plaintiff timely filed her amended complaint. ECF No. 12. Plaintiff narrowed her claims and named three defendants, all of whom are employees of the St. Louis City Justice Center: (1) Chris Incense, Correctional Officer; (2) Roberta Gordon, Caseworker; and (3)

4

Ms. Brim, Supervising Housing Unit Manager. All defendants are named in their official and individual capacities.

Plaintiff alleges that on October 6, 2021, during inmate recreation time, Officer Incense "was focused on Facebook instead of supervising the inmates." Plaintiff states she was walking to her cell when she was "snatched in and sexually assaulted" by a fellow inmate. Plaintiff alleges she yelled "help" twice. As she was "breaking away," she "met two offenders coming to [her] cell." Plaintiff asserts defendant Incense saw the two offenders begin to fight with Plaintiff but he "returned his attention to Facebook." Plaintiff alleges Officer Incense failed to protect her "due to unawareness and failed detecting and responding to a sexual assault due to failure to be trained."

Plaintiff asserts she and another inmate reported the sexual assault to defendant caseworker Gordon, but she "made no attempt to communicate with [plaintiff] or to report the sexual assault." Two days after the alleged assault, plaintiff states she submitted a second complaint to a social worker, which caused Ms. Gordon to report the assault to her supervisor, defendant Brim. Plaintiff admits "later that morning [plaintiff] was questioned."

Plaintiff alleges defendant Brim failed to train and supervise defendants Gordon and Incense on how to properly respond to a sexual assault. She further alleges defendants failed to follow the Prisoner Rape Elimination Act ("PREA"), 34 U.S.C.S. § 30301, *et seq*. Plaintiff describes her injuries as insomnia, nightmares, trauma, depression, anxiety, and voices in her head. She seeks $750,000 in damages.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To

state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that a court must accept factual allegations in the complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented complainants are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff that assumed facts that had not been pleaded). In addition, affording a self-represented complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse

6

mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Discussion

Having thoroughly reviewed and liberally construed the amended complaint, and for the reasons discussed below, the Court will dismiss this action for failure to state a claim.

### A. Official Capacity Claims

A suit brought against an official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). In other words, the real party in interest in an official capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Defendants Incense, Gordon, and Brim are alleged to be employed by the St. Louis City Justice Center. A suit against them in their official capacities is treated as a suit against the agency that employs them. A jail, however, is not a suable entity. *See Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating "jails are not legal entities amenable to suit"); *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (stating "departments or subdivisions" of local government are not "juridical entities suable as such"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of jail as a party because it was not a suable entity). Defendant St. Louis City Justice Center is a subdivision of city government. As such, the complaint is legally frivolous and

fails to state a claim upon which relief can be granted as to defendants in their official capacities.

Even if the City of St. Louis is substituted as the employer, plaintiff fails to state a claim for municipal liability. A local governing body can be sued directly under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Municipal liability under § 1983 may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). Thus, there are three ways in which a plaintiff can prove municipal liability.

First, "policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible . . . for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390.

Alternatively, in order to establish a claim of liability based on "custom," the plaintiff must demonstrate:

8

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, to establish deliberate indifference for purposes of failure to train, the plaintiff must show a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017). In order to state a claim for relief under § 1983 for a failure to train, the plaintiff must demonstrate (1) the training and supervision practices were inadequate, (2) the City was deliberately indifferent to the rights of others in adopting the training and supervision policies and practices, and (3) the alleged training and supervisory deficiencies caused a constitutional depravation. *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013). Ultimately, the plaintiff must show the City "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018).

Plaintiff's amended complaint does not contain any allegations that a policy or custom of the City of St. Louis was responsible for the alleged violations of her constitutional rights. To the contrary, plaintiff asserts that "[i]f the laws were followed," she would not have been assaulted. ECF No. 12 at 6. This statement reflects that the individual's actions, not a municipal policy or custom, allegedly caused the violation.

Plaintiff also has not sufficiently alleged that the City of St. Louis was deliberately

indifferent toward training or supervising its employees. Although plaintiff alleges defendants Incense and Gordon were not trained properly by defendant Brim, she does not show a pattern of similar constitutional violations by untrained employees. Instead, plaintiff's allegations concern purported violations that occurred to her and her alone, rather than a widespread pattern. In short, she has failed to properly allege that the City of St. Louis was the "moving force" behind her constitutional deprivations. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (explaining that "a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation"). Also, plaintiff offers only conclusory statements that defendants Incense and Gordon were not properly trained. Such allegations lack factual detail and support, are not entitled to a presumption of truth, and require this Court to assume facts not alleged, which it may not do.

Lastly, to any extent plaintiff is intending to assert liability based on the sole fact that defendants are employed by the City, such an official capacity claim fails. A municipality cannot be held liable simply because it employs an alleged tortfeasor. *See A.H. v. St. Louis City, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality . . . cannot be liable on a respondeat superior theory").

Therefore, plaintiff has failed to state a claim for municipal liability, and the official capacity claims against defendants must be dismissed.

### B. Individual Capacity Claims

#### *1. Prisoner Rape Elimination Act Claims against all Defendants*

Plaintiff alleges all three defendants failed to follow the Prisoner Rape Elimination Act ("PREA"), 34 U.S.C.S. § 30301, *et seq.*, in responding to the alleged sexual assault. These allegations fail to state a claim upon which relief may be granted.

PREA "authorizes the reporting of incidents of rape in prison, allocation of grants, and creation of a study commission," but nothing in PREA indicates it devised a private right of action to be enforced under § 1983. *Thompson v. Chief Exec. of Utah*, Case No. 2:20-CV-459 RJS, 2021 WL 2322479, at *1 (D. Utah June 7, 2021) (quoting *Porter v. Jennings*, Case No. 1:10-cv-01811-AWI-DLB PC, 2012 WL 1434989 (E.D. Cal. Apr. 25, 2012)); *J.K.J. v. Polk Cty.*, No. 15-cv-428-WMC, 2017 WL 28093, at *12 (W.D. Wis. Jan. 3, 2017) ("there is no private right of action under the PREA"). In other words, PREA does not give prisoners a personal right to sue for an official's failure to comply with the Act's requirements. *See Johnson v. Garrison*, 859 F. App'x 863 (10th Cir. 2021); *Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020); *Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015).

Moreover, "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights privileges, or immunities *secured by the Constitution* and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis added). "[T]o seek redress through § 1983 . . . a plaintiff must assert the violation of a federal right, not merely a violation of federal law." *Id.* (emphasis in original) (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)). Although "it is true that prison officials have a duty under the Constitution to protect prisoners from assault . . . the Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened." *Summers v. Waggoner*, Case No. 3:19-CV-01338-SMY, 2020 WL 6321488, at *3 (S.D. Ill. Oct. 28, 2020) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994) and *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). PREA is not right secured by the Constitution.

Therefore, as a matter of law, plaintiff's allegations against defendants for violations of PREA fails to state a claim on which relief can be granted.

### *2. Failure to Protect against Defendant Officer Incense*

Plaintiff alleges she was sexually assaulted by an inmate on October 6, 2021, and defendant Incense failed to protect her because he was "focused on Facebook instead of supervising the inmates." Plaintiff asserts that because he was distracted, he was unaware of the assault even though she yelled "help" twice." Plaintiff further alleges that after the sexual assault defendant Incense witnessed her "fight" with two inmates but did not take any action. Plaintiff does not state whether the fight was physical or verbal, how long it lasted, or whether she sustained any physical injuries.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (internal quotations omitted). However, not every injury suffered by one prisoner at the hands of others establishes constitutional liability on the part of the prison official. *Id.* at 834. A failure to protect claim cannot be based "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005).

The Eighth Circuit has established a two-pronged test to determine the sufficiency of failure to protect allegations. *See, e.g., Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010); *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010). Under the first prong, the court considers "whether, viewed objectively, the deprivation of rights was sufficiently serious." *Nelson*, 603 F.3d at 446 (quoting *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)).

To be sufficiently serious a plaintiff must demonstrate "that the official's failure to protect resulted in the inmate being 'incarcerated under conditions posing a substantial risk of serious harm.'" *Young v. Selk*, 508 F.3d 868, 872 (2007) (quoting *Farmer*, 511 U.S. at 834). Under the second prong, "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it[.]" *Young*, 508 F.3d at 873 (citing *Farmer,* 511 U.S. at 834). Mere negligence, including gross negligence, does not support a conclusion that a prison official was deliberately indifferent in responding to a risk. *Norman v. Schuetzle*, 535 F.3d 1097, 1106, 1107 (8th Cir. 2009).

Plaintiff's allegation against defendant Incense establishes, at most, that he was negligent in perceiving a potential risk of an inmate attacking or assaulting another inmate during recreation, not that he recklessly disregarded a known and substantial risk. *See Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (explaining, in a failure to protect case, "deliberate indifference includes something more than negligence . . . it requires proof of a reckless disregard of the known risk"); *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003) (negligence, and even gross negligence, is insufficient to establish a failure to protect claim); *Tucker v. Evans*, 276 F.3d 999, 1002 (8th Cir. 2002) (explaining that "even gross negligence" is insufficient to establish a failure to protect claim); *Blades v. Schuetzle*, 302 F.3d 801, 804 (8th Cir. 2002) (mere negligence is insufficient to establish a violation of the Eighth Amendment); *Horde v. Hyatte*, Case No. 3:20-CV-949-RLM-MGG, 2021 WL 4427182, at *1 (N.D. Ind. Sept. 27, 2021) (an officer's failure to "pay attention" does not give rise to a failure to protect claim).

Here, defendant Incense's alleged negligence in failing to keep a close watch of inmates during recreation time due to his preoccupation with his phone or computer fails to state a claim

13

of reckless disregard. *See e.g.*, *Patterson v. Kelley*, Case No. 5:15-CV-75 JLH-JTR, 2016 WL 4923579, at *4 (E.D. Ark. Aug. 23, 2016), *report and recommendation adopted*, Case No. 5:15-CV-75 JLH-JTR, 2016 WL 4940325 (E.D. Ark. Sept. 14, 2016), *aff'd*, 902 F.3d 845 (8th Cir. 2018) (an allegation that a correctional officer was "not paying attention" is a claim of negligence, not failure to protect). Plaintiff does not assert that the inmate who allegedly assaulted her was an actual known danger or presented a known threat to her. She also does not allege that defendant Incense was actually aware of the sexual assault when it occurred. To the contrary, she states he was "unaware" and "failed to detect" the situation. Thus, plaintiff has failed to sufficiently allege that defendant Incense was deliberately indifferent to or actually knew of a substantial risk.

As to the fight that defendant Incense did allegedly witness between plaintiff and two other inmates, the amended complaint does not assert any facts supporting that intervention was needed, or that it was more than a verbal dispute. Plaintiff does not allege that any physical contact occurred, or that any injury was caused from the fight. In other words, she fails to assert a serious deprivation.

Thus, the Court concludes plaintiff has failed to state a failure to protect claim against defendant Incense.

### *3. Failure to Immediately Report the Assault against Defendant Gordon*

Plaintiff alleges she reported the sexual assault to defendant Gordon, who "made no attempt to communicate with [plaintiff] or to report" the incident. Two days after the alleged assault, plaintiff asserts she made a second report to a social worker. On that date, plaintiff states that defendant Gordon notified defendant Brim of the alleged assault and she was immediately questioned.

Plaintiff's sole allegation against defendant Gordon is that she did not follow PREA federal laws and, instead, waited two days to report the incident. As previously discussed, a failure to follow PREA does not establish a private cause of action and a violation of the statute is not a constitutional violation. *See e.g.*, *Fleming v. Indiana Dep't of Correction*, Case No. 3:19-CV-646-DRL-MGG, 2020 WL 7629090, at *2 (N.D. Ind. Dec. 21, 2020) (an allegation that a "PREA report was ignored or that the investigation took too long" does not state a claim for relief under § 1983 because "PREA does not provide a private right of action"). Thus, this claim against defendant Gordon must be dismissed.

### 4. Failure to Train against Defendant Brim

Lastly, plaintiff alleges defendant Brim, the supervising Housing Unit Manager, failed to train defendants Incense and Gordon on how to properly respond to a sexual assault under PREA. In support, plaintiff points to the fact that during her PREA interview, "Ms.Brim asked to use [her] situation to train Ms. Gordon and two other unidentified care workers on how to respond to prison rape/sexual assault."

To demonstrate a defendant's individual liability under § 1983 arising out of a failure to train, a plaintiff must establish that the defendant's "failure to remedy [a] known pattern of unconstitutional acts [by subordinates] proximately caused his injury." *Williams v. Davis*, 200 F.3d 538, 539 (8th Cir. 2000) (per curiam) (citing *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997)); *accord McGuire v. Cooper*, 952 F.3d 918, 923 (8th Cir. 2020) (an official may be liable under § 1983 if the failure to train amounts to deliberate indifference to the rights of those with whom the officials come in contact and the alleged failure to train actually causes the alleged constitutional violation). In particular, the plaintiff "must demonstrate that the supervisor was

15

deliberately indifferent to or tacitly authorized the offending acts[, which] requires a showing that the supervisor had notice that the training procedures . . . were inadequate and likely to result in a constitutional violation." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). *Accord Barton v. Taber*, 908 F.3d 1119, 1125 (8th Cir. 2018); *Livers v. Schenck*, 700 F.3d 340, 356 (8th Cir. 2012). In other words, for a failure to train claim, plaintiff "must prove the [jail] officials *personally knew* of the constitutional risk posed by their inadequate training . . . and proximately caused [the inmate's] injury by failing to take sufficient remedial action." *Walton v. Dawson*, 752 F.3d 1109, 1118 (8th Cir. 2014) (emphasis in original) (citing *Farmer*, 511 U.S. at 837-39).

In the amended complaint, plaintiff summarily alleges defendant Brim "failed to train and supervise Incense and caseworker Gordon." Plaintiff makes no other allegations to support her failure to train claim, other than to state that defendant Brim used her situation to train care workers on how to respond to sexual assault. Plaintiff does not explain how defendant Brim used her situation as training, or that defendant Gordon or Incense responded to a prior assault incorrectly. These allegations do not demonstrate there was a pattern of similar conduct by untrained staff at the Jail, or that defendant Brim knew about such a pattern. To the contrary, the entirety of plaintiff's complaint relates to her alleged assault on October 6, 2021, and the response to that assault. She does not assert that she had been subject to a sexual assault prior to October 6, 2021, or that other inmates experienced the same. The Court may not assume facts that are not alleged.

Moreover, a supervising officer can only be liable for an inferior officer's *constitutional violation* only if he directly participated in the violation, or if his failure to train or supervise the offending actor caused the deprivation. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010; *see*

*also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution"). "[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995).

Here, there was no constitutional deprivation. As discussed above, a failure to comply with PREA is not a constitutional violation, and PREA does not grant prisoners any specific rights. Thus, there is no allegation that defendant Brim directly participated in any constitutional violation. "Without a showing that the [officer] violated the Constitution . . . there can be no liability for failure to train." *Carpenter v. Gage*, 686 F.3d 644, 651 (8th Cir. 2012) (citation omitted); *see also Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) ("Because [the plaintiff] failed to establish [defendant officer] violated [plaintiff's] constitutional rights, [plaintiff] cannot maintain this action against [the supervisor].").

Thus, the Court concludes plaintiff has failed to state a failure to train claim against defendant Brim.

## Motion for Copies

The Court received a letter, dated April 6, 2022, requesting a copy of: (1) the original and amended complaint; and (2) all Court orders issued in this case. ECF No. 15. This request, construed as a motion for copies, will be denied because this case is being dismissed for failure to state a claim. Additionally, the Clerk of Court has previously explained to plaintiff that all Orders entered by the Court will automatically be sent to her, and any additional copies are $0.50 per page. *See* ECF No. 8. The Court does not provide free copies of documents, even if those

documents were filed by the parties themselves.

If plaintiff would like to obtain copies, she must resubmit her request, identify the exact documents she wishes to receive, and include payment. For plaintiff's reference, the original complaint is thirty-two (32) pages, the amended complaint is twelve (12) pages, and the Court's January 21, 2022 Memorandum and Order is eighteen (18) pages not including the blank civil rights complaint forms.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall not issue process or cause process to issue upon the amended complaint because it fails to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that this action is **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's letter, dated April 6, 2022, construed as a motion for copies, is **DENIED**. [ECF No. 15].

**IT IS FURTHER CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

A separate Order of Dismissal with be entered with this Memorandum and Order.

Dated this 15th day of April, 2022.

/s/ John A. Ross
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**